150 N.J. Super. 339 (1977)
375 A.2d 1185
SUBURBAN SAVINGS AND LOAN ASSOCIATION, APPELLANT,
v.
COMMISSIONER OF BANKING OF THE STATE OF NEW JERSEY, RESPONDENT. THE NEW JERSEY BANKERS ASSOCIATION, APPELLANT,
v.
COMMISSIONER OF BANKING OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1977.
Decided May 12, 1977.
*342 Before Judges FRITZ, ARD and PRESSLER.
Mr. Sidney J. Bernstein argued the cause for appellant Suburban Savings and Loan Association (Messrs. Cole, Berman & Belsky, attorneys; Mr. Harvey A. Miller on the brief).
Mr. Michael F. Spicer argued the cause for appellant The New Jersey Bankers Association (Messrs. Jamieson, McCardell, Moore, Peskin & Spicer, a professional corporation).
Mr. William F. Hyland, Attorney General of New Jersey, submitted a statement in lieu of brief for respondent Commissioner of Banking of the State of New Jersey (Mr. Harley A. Williams, Deputy Attorney General, on the statement in lieu of brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
These consolidated appeals present a narrow but important question regarding the scope of the investment powers accorded by the Legislature to savings and loan associations.
The most recent comprehensive revision of the Savings and Loan Act, N.J.S.A. 17:12B-1 et seq., enacted in 1963, permits such associations to invest "In any investment in which savings banks of New Jersey are or shall be authorized to invest by any law of this State * * *." N.J.S.A. 17:12B-165(5). In 1975 Article 12 of the Banking Act of 1948, N.J.S.A. 17:9A-53 to 59, was amended by the adoption of N.J.S.A. 17:9A-53.1, which provides in full as follows:
A savings bank may invest in or make installment loans upon the terms and conditions prescribed for banks in accordance with article 12 of the act to which this is a supplement; provided, however, that the total of all such loans made by a savings bank pursuant *343 to this act shall not exceed 10% of such savings bank's deposits.
The immediate and conceded effect of N.J.S.A. 17:9A-53.1 was to authorize savings banks for the first time in their history to make Class I loans as defined by N.J.S.A. 17:9A-53(B) (6), that is, personal installment loans unrelated to the borrower's use or improvement of real property. The precise issue before us is the extent to which, if at all, the authorization of N.J.S.A. 17:9A-53.1 applies, by virtue of N.J.S.A. 17:12B-165(5), to savings and loan associations as well as to savings banks.
The question arises as a result of the understanding by Suburban Savings and Loan Association (Suburban) that the full scope of the authorization of N.J.S.A. 17:9A-53.1 was applicable to savings and loan associations. It accordingly, shortly after the April 7, 1975 effective date of that provision, corresponded with the New Jersey Commissioner of Banking seeking his confirmation of that construction of the enactment and advising of its intention to commence making consumer installment loans as of November 1, 1975. The New Jersey Bankers Association (Bankers), a voluntary association representing the financial interests of the commercial banks in this State, learning of Suburban's intention, also communicated with the Commissioner in order to attempt to persuade him that N.J.S.A. 17:9A-53.1 was not intended by the Legislature to permit savings and loan associations as well as savings banks to compete freely with commercial banks in respect of consumer installment loans. The Commissioner requested an opinion from the Attorney General which, apparently, was not immediately forthcoming, and Suburban did in fact start its consumer installment loan activity as scheduled and at rates generally lower than those charged by commercial banks for similar services.
On August 17, 1976 the Acting Commissioner of Banking dispatched the following letter to Suburban:
*344 We have just been advised by the Office of the Attorney General that a savings and loan association "may invest in but * * * may not make installment loans pursuant to the provisions of N.J.S.A. 17:12B-165(5)."
Therefore, pursuant to N.J.S.A. 17:2B-178 [17:12B-178], you are hereby instructed to immediately cease advertising and making installment loans pursuant to the provisions of N.J.S.A. 17:12B-165(5).
This advisory, as well as the cease and desist instruction, was confirmed by the Commissioner himself on August 27, 1976.
Suburban appealed from that portion of the Commissioner's instruction requiring it to stop making Class I installment loans. Bankers appealed from that portion of the Commissioner's instruction permitting Suburban to invest in Class I installment loans. We consolidated these appeals and stayed that portion of the Commissioner's order requiring Suburban to terminate its installment loan program.
We note at the outset that while Suburban and Bankers have filed extensive briefs on the statutory construction problem here presented, the Commissioner, the sole named respondent in both appeals, has seen fit to file only a statement in lieu of brief pursuant to R. 2:6-4. He advises us therein merely that while he believes his orders were correct, nevertheless "since the issues have been adequately briefed by Suburban and the Bankers Association, the Commissioner feels that it is unnecessary to submit a separate brief." We regard that procedural determination by the Commissioner to have been regrettable. We are satisfied that the option accorded by R. 2:6-4 to a public agency or officer respondent to file a statement in lieu of brief was not intended and is not appropriately relied on to relieve such a respondent from at least explaining, if not defending, the reasons for an action taken by it which implicates the public interest and which is not in the nature of a quasi-judicial decision determining rights as between private-party adversaries. We have thus been deprived not only of the Commissioner's own reasoning in arriving at his interpretation of the statute *345 which is here challenged but also of the basis upon which the Attorney General's opinion, relied on by him in making that interpretation, was formulated. We were advised at oral argument by the interested parties that neither was aware of any written Attorney General's opinion and that both believed it to have been orally rendered. We are left then in our burden of construing this statute, which substantially affects the public interest, with only the arguments of appellants, each of whom is seeking primarily to protect or advance its own competitive commercial interest.
The first of our interpretive problems is to determine whether the word "invest," as used by N.J.S.A. 17:12B-165(5), was intended to be limited to the highly technical definition of acquisition of a proprietary interest by purchase of securities or was rather used in its broader generic and dictionary sense of any outlay of money for income or profit. See, e.g., Webster's New International Dictionary (3 ed., unabridged). The narrower definition would sustain the Commissioner's ruling permitting savings and loan association's to invest in installment loans, that is, to purchase installment loan paper. The broader definition, urged by Suburban, would permit savings and loan associations to make installment loans as well as to purchase the paper. We conclude that it was the broader definition which was intended by the Legislature.
Most persuasive to us is the evolution of the history of the savings and loan association itself. Traditionally, savings and loan associations were mutual banks whose essential purposes were to encourage thrift by mutuality of ownership and to encourage home ownership by the making of first mortgage loans, its primary and fundamental investment activity. As further described by Justice Hall in Application of Howard Savings Institution of Newark, 32 N.J. 29 (1960),
State and federal savings and loan associations, which have grown tremendously in recent years and are today in effect savings banks, *346 furnish the greatest competition for the savings dollar since they generally pay a fraction more in dividends to members even than a savings bank. The latter competes by attempting to offer the customer more and wider services and conveniences. All compete with each other in seeking mortgage loans, the principal investment of savings institutions and an important asset class of commercial banks in smaller communities. [at 39-40]
And see, Rocker v. Cardinal B. & L. Ass'n of Newark, 13 N.J. Misc. 397, 404-405, 179 A. 667 (Sup. Ct. 1935), aff'd 119 N.J.L. 134 (E. & A. 1937). These original purposes were, moreover, expressly stated by the 1963 act itself, N.J.S.A. 17:12B-12, as then enacted, providing that
Associations operating under the provisions of the act shall be mutual associations for the purpose of promoting thrift, home ownership and housing.
It may well be that if the mutual association structure and the exclusive purposes of thrift and home ownership, as provided by the 1963 Savings and Loan Association Act, had remained unchanged at the time N.J.S.A. 17:9A-53.1 was enacted in 1975, we might be inclined to agree that any expansion of the authority of savings and loan associations to put their depositors' money to income-producing uses for purposes other than residential financing should be construed as strictly and narrowly as possible. But the year before the enactment of N.J.S.A. 17:9A-53.1 two major changes were made in the Savings and Loan Association Act by L. 1974, c. 137. The first of these was amendment of N.J.S.A. 17:12B-12, which enlarged the statement of purposes to include, in addition to promoting thrift, home ownership and housing, "otherwise investing funds in accordance with the provisions of this act." The second was the enactment of Articles 21 and 22 of the act, N.J.S.A. 17:12B-244 to 276, permitting savings and loan institutions to be structured or restructured as capital stock associations. The statement accompanying the 1974 act made clear that its intention was not to detract from the primary function of savings and *347 loan associations as essentially mortgage-lending institutions but rather to enhance that function. The option of a capital stock structure was accordingly designed to relieve the increasingly evident curtailment of savings deposit growth which was resulting from statutory requirements that mutual associations maintain considerable reserves out of retained earnings. Those reserves consequently were unavailable for any investment purpose. Hence, the fundamental aim of the 1974 act was to increase the supply of residential mortgage money by permitting the savings and loan associations to attract increased deposits without the onerous reserve restrictions on earned income. Obviously the prime method of increasing deposits is to maintain a competitive position with other banking institutions with respect to the disposition by the public of its savings. Thus, as of 1974 and as expressed by the then expanded purpose statement of N.J.S.A. 17:12B-12, the Legislature, rather than restricting the investment powers of savings and loan institutions, actually reaffirmed their enlargement and in no way retreated from the underlying philosophy of N.J.S.A. 17:12B-165(5), which equated these powers, both in praesenti and prospectively with those of savings banks. Indeed, even Bankers concedes that until the adoption of N.J.S.A. 17:9A-53.1 there was no substantial difference in the investment powers of savings banks and savings and loan associations and no type of outlay of money to produce income was permitted a savings bank which was denied a savings and loan association.
It is in this context that N.J.S.A. 17:9A-53.1 must be considered. The statement accompanying that enactment stated in full as follows:
The purpose of this bill is to authorize New Jersey's mutual savings banks to offer installment loans to their depositors and to others upon the same terms and conditions and subject to the same regulations as are now prescribed for commercial banks. The aggregate amount of all such installment loans may not exceed 10% of the total deposits of such bank, however.
*348 New Jersey savings banks are primarily concerned with individual savings deposits which are largely invested in residential mortgage loans. In order to offer full service opportunities to their depositors and to keep mutual savings banks competitive with other banking institutions this bill would give mutual savings banks a limited authority to make and invest in individual installment loans.
From the foregoing it is patent that this statement of purpose applies with equal force to savings and loan associations, which are, just as the savings banks, "primarily concerned with individual savings deposits which are largely invested in residential mortgage loans" and which, as indicated by the 1974 amendment of the Savings and Loan Association Act, require no less a degree of an enhanced competitive position vis-a-vis both commercial and savings banks in order to continue to serve that concern.
The Commissioner obviously was satisfied that the effect of N.J.S.A. 17:9A-53.1 was to confer on the savings and loan associations the power to invest in consumer installment loans up to the 10% limitation. He apparently concluded that they could not make such loans because while the language of N.J.S.A. 17:9A-53.1 is "invest in or make installment loans," the language of N.J.S.A. 17:12B-165(5) is only "invest."
We do not, however, accord this distinction in verbiage the same conclusive effect as the Commissioner did. Suburban points to a variety of instances throughout the banking laws where the terms "invest" and "investment" patently include the terms "lend" and "loan." Bankers, with equal adeptness, draws our attention to a variety of instances where these terms are used narrowly. We are satisfied, however, that no generalization can be made as to the routine interchangeability of these terms throughout the banking laws. Rather, whether or not a particular use of the term "investment" is narrow and excludes loans or is generic and includes them depends on its specific context and particularly the explicit or implicit legislative intent. We do, however, start with that canon of legislative construction which requires *349 that words in statutes be accorded their generally accepted meanings unless their context or the manifest legislative intent otherwise requires. N.J.S.A. 1:1-1. And see Fahey v. Jersey City, 52 N.J. 103, 107 (1968); Safeway Trails, Inc. v. Furman, 41 N.J. 467-478 (1964), cert. den. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964); Lane v. Holderman, 23 N.J. 304, 313 (1957). As we have already indicated, the standard dictionary definition of the word "invest" is "to lay out [money or capital] in business with the view of obtaining an income or profit." Making loans is, therefore, a form of investing as "investing" is commonly understood. We further point to the organizational structure of N.J.S.A. 17:12B-165 itself. Captioned "Other Investments, Securities," it proceeds to enumerate investments, some of which are clearly loans. N.J.S.A. 17:12B-155, describing specific loans which may be made, also speaks of them as investments. And N.J.S.A. 17:12B-145, the fundamental statement of investment powers, which introduces Article X of the Savings and Loan Association Act, provides in full that "The funds of every association shall be invested in accordance with the provisions of this act." N.J.S.A. 17:12B-146, the basic mortgage loan section, again refers to that outlay of money as an investment. Obviously, these uses of the term "investment," if it did not include the making of loans, would put savings and loan associations out of the mortgage-lending business altogether.
Nor do we perceive how the distinction between investing in consumer installment loans and making such loans and the consequent authority of savings and loan associations to engage in the first but not the second would serve any stated legislative policy or would offer any greater protection to the public. The same 10% limitation would apply whether only installment loan paper were purchased or whether loans were made exclusively or in combination with the purchase of paper. While it is suggested that purchase of paper is a safer investment than the making of the loan because of possible recourse to an endorser, nevertheless we would assume *350 that a bank lending money to its own depositors would be able to make the necessary personal and business judgments to secure itself. Furthermore, and most importantly, as we have noted, the whole purpose of N.J.S.A. 17:9A-53.1 was to enable mutual savings banks to retain old depositors and to attract new ones by being able to offer, on a limited basis, a consumer loan service. This competitive advantage was, in turn, designed to insure their effective continuation in what is their primary business of making purchase money mortgages. Permitting savings and loan associations to purchase installment loan paper but not permitting them to make the loan itself would subvert that purpose by diverting funds from residential property loans without at the same time increasing deposits by being able to directly serve the consumer loan needs of depositors. We are satisfied, for all these reasons, that N.J.S.A. 17:9A-53.1 and N.J.S.A. 17:12B-165(5) must be read in pari materia and that such a reading requires reading the term "investment" in the latter provision according to its customary meaning. It includes the making of loans.
Bankers contends not only that the two statutes cannot be read as permitting savings and loan associations to make consumer loans but further, that they cannot even be read as permitting them to invest in installment loans. It predicates this contention on N.J. Const. (1947), Art. IV, § VII, par. 5, which provides, among other things, that
No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act.
The argument is that this provision interdicts an unreferenced incorporation by N.J.S.A. 17:9A-53.1 of N.J.S.A. 17:12B-165(5). The short answer to this is that N.J.S.A. 17:9A-53.1, the later enactment, does not incorporate N.J.S.A. 17:12B-165(5), but rather that N.J.S.A. 17:12B-165(5) *351 incorporates by its prospective language N.J.S.A. 17:9A-53.1. The constitutional prohibition is, therefore, inapposite. We are further satisfied that the test of whether this constitutional provision has been violated is whether the legislative enactment challenged is a complete piece of legislation standing by itself and without reference to other legislation. Eggers v. Kenny, 15 N.J. 107, 124 (1954). N.J.S.A. 17:9A-53.1 clearly meets that test. We regard the problem before us, therefore, as not a constitutional one but as solely a constructional one.
Finally, Suburban challenges Bankers' standing to appeal from the Commissioner's orders here under review. We are, however, satisfied that as an association of competitors whose financial interests are directly affected by the orders, its standing is clear. Crescent Park Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98 (1971). Its standing is further supported by the extent of the public interest implicated in the issue before us. See Elizabeth Federal S. & L. Ass'n v. Howell, 24 N.J. 488, 499 (1957).
The orders here appealed from insofar as they permit Suburban to invest in Article 12, Class I loans are affirmed. Insofar as they prohibit Suburban from making such loans, they are reversed.