170 N.J. Super. 576 (1979)
407 A.2d 844
TRI-COUNTY SAVINGS AND LOAN ASSOCIATION, APPELLANT,
v.
COMMISSIONER OF BANKING OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1979.
Decided October 17, 1979.
*577 Before Judges BISCHOFF, BOTTER and DWYER.
Mr. Richard T. DeCou argued the cause for appellant (Messrs. Capehart & Scatchard, attorneys).
Mr. Mark S. Rattner, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Assistant Attorney General, of counsel, Ms. Adrenee G. Freeman, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
*578 This appeal requires a further consideration of the scope of the investment powers granted savings and loan associations by the Legislature; specifically, whether the power to "invest in or make installment loans" conferred by L. 1975, c. 48, § 1, N.J.S.A. 17:9A-53.1 and N.J.S.A. 17:12B-165(5), includes the power to purchase "time sale" contracts or other similar obligations originated by sellers of goods or services, including motor vehicle installment sales.
Appellant Tri-County Savings and Loan Association (hereafter Tri-County) is a small savings and loan association chartered by the State of New Jersey pursuant to the Savings and Loan Act (1963). N.J.S.A. 17:12B-1 et seq. It is under the direct supervisory and regulatory authority of the Commissioner of Banking. Also, because of its membership in the Federal Savings and Loan Insurance Corporation, Tri-County is subject to the supervision of the Federal Home Loan Bank Board.
N.J.S.A. 17:12B-155B grants savings and loan associations the power to:
... purchase any mortgage loan, property repair, alteration, improvement or rehabilitation loan, or any other loan which an association is authorized to make.
And N.J.S.A. 17:12B-165(5) provides that savings and loan associations may invest:
In any investment in which savings banks of New Jersey are or shall be authorized to invest by any law of this State, other than investments which are, or which hereafter shall be, specifically designated and regulated by this act....
In 1975 Article 12 of the Banking Act of 1948 (N.J.S.A. 17:9A-53 to 59) was amended by the adoption of N.J.S.A. 17A:9A-53.1 to provide:
A savings bank may invest in or make installment loans upon the terms and conditions prescribed for banks in accordance with article 12 of the act to which this is a supplement; provided, however, that the total of all such loans made by a savings bank pursuant to this act shall not exceed 10% of such savings bank's deposits.
*579 Interpreting this amendment as granting it broad new powers of investment, Tri-County began making direct installment loans in late 1975 or early 1976. In addition, it prepared to indirectly enter the commercial money market by investing in or purchasing retail security obligations generated by retail sellers in the course of selling their goods and services. Tri-County was specifically interested in the purchase of installment obligations generated by Pennsylvania automobile dealers.
Pursuant to this plan, Tri-County applied for and obtained a license from the Commonwealth of Pennsylvania authorizing it to purchase installment obligations generated by automobile dealers in that state. It also submitted an application to the New Jersey Department of Banking for a license to operate as a sales finance company under the terms of the Retail Installment Sales Act of 1960. N.J.S.A. 17:16C-1 et seq. That act requires any "person" to obtain a license before it may "engage in or continue to engage in the business of a sales finance company," N.J.S.A. 17:16C-2, or, in other words, before it may engage "in the business of acquiring or arranging for the acquisition of retail installment contracts ... by purchase, discount, pledge or otherwise...." N.J.S.A. 17:16C-1(f).
On November 24, 1976 the Acting Commissioner of Banking issued a written decision and order denying Tri-County's application for a license because there was nothing in the Savings and Loan Act (1963) "which would authorize a savings and loan association to engage in the subsequent financing of time sale contracts or other obligations originated by sellers of goods and services."
Following the issuance of the opinion of this court in Suburban S. & L. Ass'n v. Banking Comm'r, 150 N.J. Super. 339 (App.Div. 1977), where we held that the enactment of § 53.1 authorized savings and loan associations to offer a consumer loan service to their customers on a limited basis, Tri-County *580 again submitted an application for a sales finance company license. Again it was denied by the Commissioner. The decision denying the application contained a cease and desist order dated December 30, 1977, directing Tri-County to stop all investments in time sales contracts. The Commissioner reasoned:
... The kinds of transactions which the Retail Installment Sales Act of 1960 permits finance companies to engage in are the making of time sales contracts, not installment loans. The distinction is one which is well established in law and has been articulated by our courts on several occasions. See, e.g., Sliger v. R.H. Macy and Company, 59 N.J. 465 (1971) and Steffenauer v. Mytelka and Rose, Incorporated, 87 N.J.Super 506 (Ch.Div. 1965), aff'd o.b. 46 N.J. 299 (1966). It would appear that the failure to distinguish between the time sales contracts, as regulated and authorized by the Retail Installment Sales Act of 1960, and direct consumer installment loans is at the heart of the difficulties in this matter.... . [Emphasis in original].
Tri-County thereafter filed a verified complaint in lieu of prerogative writs against respondent Commissioner of Banking, seeking a preliminary injunction against the enforcement of the cease and desist order pending resolution of the underlying issue. The complaint was transferred to the Appellate Division where a stay was granted.
On this appeal both parties have raised issues relating to the procedural history of the dispute. Since the appeal involves a matter of public importance, we elect to pass over such issues and base our decision on the merits.
This appeal requires us to determine whether the grant of authority to "invest in or make installment loans" contained in N.J.S.A. 17:9A-53.1 includes the power to purchase retail installment obligations or time sales contracts. In other words, the issue is whether the retail installment obligations at issue here are "installment loans" within the meaning of N.J.S.A. 17:9A-53.1. The Commissioner concluded they were not. We agree.
In essence, respondents position is that the words "installment loan," as used in § 53.1, are to be given a narrow construction *581 and do not include anything which the law would not characterize as an actual loan. An example is where a retail seller extends credit and permits a buyer to purchase merchandise by paying back the purchase price on an installment basis plus some interest obligation. Tri-County, on the other hand, interprets the words broadly to encompass any situation in which forebearance is exercised or credit is extended to another on an installment basis.
When stripped to its barest essentials, the problem presented is one of statutory construction. Tri-County Savings and Loan Association is a creature of the Legislature whose very existence and all of whose activities are derived from pertinent statutes and regulations. The Legislature has declared that "[t]he funds of every association shall be invested in accordance with the provisions of" the Savings and Loan Act (1963). N.J.S.A. 17:12B-145. It follows that unless the investment activities in which Tri-County wishes to engage are permitted by some relevant statute or valid regulation adopted pursuant to the Savings and Loan Act (1963), Tri-County may not engage in those activities.
Tri-County argues that it derives authority to invest in or purchase the retail installment obligations or time sales contracts in issue here from N.J.S.A. 17:12B-155B, N.J.S.A. 17:12B-165(5) and N.J.S.A. 17:9A-53.1. But, Tri-County's position is not advanced by either N.J.S.A. 17:12B-155 or N.J.S.A. 17:12B-165. Both sections depend upon the existence of some other grant of authority in order to become operative.
Recognizing that fact, Tri-County points to N.J.S.A. 17:9A-53.1 as the source of its authority. It argues that since, under the rule of the Suburban case, it can make a direct installment loan to a borrower, including a loan for the purpose of purchasing a car on installments, it is authorized to take the investment risk of purchasing and "investing in" any type of loan it may make directly. Tri-County asserts that the procedures preceding *582 acceptance of the risk are identical in both cases, and in the case of an indirect loan there is added security in that the lender has an agreement with the car dealer or other retail seller creating the time sales contract for either limited or full recourse.
This argument does have a surface appeal. There appears to be very little difference between a true installment loan where money is loaned to "A" by the bank so that "A" may purchase goods from the seller, and what Tri-County characterizes as a time sales contract in which the retail seller permits "A" to purchase the goods on an installment basis and the association then purchases the contract. Certainly, to the general public, a distinction between the two types of transactions would be almost incomprehensible. However, this distinction has been recognized under the usury statutes, Sliger v. R.H. Macy and Co., Inc., 59 N.J. 465 (1971); Steffenauer v. Mytelka and Rose, Inc., 87 N.J. Super. 506 (Ch.Div. 1965), aff'd o.b. 46 N.J. 299 (1966), and is a matter of policy for the Legislature. Sliger v. R.H. Macy and Co., Inc., supra, 59 N.J. at 470.
Our paramount obligation is not to invalidate legislation merely because we disapprove of its underlying public policy. Vornado, Inc. v. Hyland, 77 N.J. 347, 354 (1978). We cannot invalidate a legislative expression of policy under the ruse of statutory interpretation because we conceive sound policy reasons exist for doing away with a distinction created by the legislation. If the distinction exists in the legislation, it is our obligation to recognize and enforce it.
Examination of Article 12 of the Banking Act of 1948 (N.J.S.A. 17:9A-53 to 59) reveals that the term "installment loan" is used in the narrow sense as urged by respondent. One example is N.J.S.A. 17:9A-58(3), which expressly provides that nothing in Article 12 applies to
... any instrument or obligation, lawful upon its face, which is purchased or discounted by a bank pursuant to paragraph (1) of section 25 [N.J.S.A. 17:9A-25], and which represents, evidences, or secures an existing indebtedness *583 having its inception in a transaction to which the bank is not a party; regardless whether such instrument or obligation is acquired by the bank with or without rights of recourse against the person from whom the bank obtains such instrument through such purchase or discount.... [Emphasis supplied]
And N.J.S.A. 17:9A-25(1) which, as with N.J.S.A. 17:9A-58(3), applies only to commercial and not savings banks, provides that such banks shall have the power
... to discount, buy, invest in, hold, assign, transfer, sell, and negotiate promissory notes, drafts, bills of exchange, mortgages, trade acceptances, bankers' acceptances, bonds, debentures, bonds or notes secured by mortgages, installment obligations, balances due on conditional sales, and other evidences of debt for its own account, or for account of customers. [Emphasis supplied.]
Read in pari materia, these two statutory sections lead to the conclusion that while commercial banks are given broad powers to invest in and otherwise deal with the virtual gamut of debt obligations, including time sales contracts, savings banks do not have such powers but are limited to investment in "installment loans" in the narrowest sense of those terms. To hold otherwise would effectively render meaningless statutes like N.J.S.A. 17:9A-25(1) and N.J.S.A. 17:9A-58(3). Since savings banks cannot invest in or deal in time sales contracts, savings and loan associations cannot do so either.
The distinction between "installment loans" and retail sales obligations also appears in the Retail Installment Act of 1960 where "retail installment contract" is defined in a manner indicating a different type of contract from an installment loan. N.J.S.A. 17:16C-1(b).
The legislative history provides additional support for respondent's interpretation of N.J.S.A. 17:9A-53.1. Consistent with the Legislature's ongoing tendency to grant savings and loan associations and savings banks increasingly broad investment powers[1], the statement accompanying N.J.S.A. 17:9A-53.1 when it was enacted in 1975 provided in pertinent part:

*584 The purpose of this bill is to authorize New Jersey's mutual savings banks to offer installment loans to their depositors and to others upon the same terms and conditions and subject to the same regulations as are now prescribed for commercial banks. The aggregate amount of all such installment loans may not exceed 10% of the total deposits of such bank, however. [Quoted in Suburban S. & L. Ass'n v. Banking Comm'r, supra, 150 N.J. Super. at 347.]
The Legislature thus made it clear that the powers given to savings banks by this statute were not as broad as those enjoyed by commercial banks. In short, there is no indication that the Legislature ever intended to make savings banks (and by extrapolation savings and loan associations) virtually identical to, as opposed to merely competitive with, commercial banks. The following language, also taken from the statement accompanying N.J.S.A. 17:9A-53.1, makes it clear that the powers granted by that statute were intended to be limited at best:
New Jersey savings banks are primarily concerned with individual savings deposits which are largely invested in residential mortgage loans. In order to offer full service opportunities to their depositors and to keep mutual savings banks competitive with other banking institutions this bill would give mutual savings banks a limited authority to make and invest in individual installment loans. [Quoted in Suburban S. & L. Ass'n v. Banking Comm'r, 150 N.J. Super. at 348; emphasis supplied.]
We conclude the Commissioner of Banking was correct in ruling that the power granted by N.J.S.A. 17:9A-53.1 to "invest in installment loans" does not include the power to purchase and invest in retail time sales contracts.
Affirmed.
NOTES
[1] N.J.S.A. 17:12B-12 of the Savings and Loan Act (1963) was amended in 1974 to enlarge the statement of purposes to include, in addition to promoting thrift, home ownership and housing, "otherwise investing funds in accordance with the provisions of this act."