CONLEY, J.T.C.
This litigation involves the 1977 corporation business tax liability of a commercial banking corporation chartered by the State of New Jersey. The New Jersey Corporation Business Tax Act (1945) has imposed an annual franchise tax on banking corporations since 1976. N.J.S.A. 54:10A-34; L. 1975, c. 170, § 4.* The amount of a taxpayer’s corporate business tax liability is determined by the addition of prescribed percentages of net worth and net income allocable to this State. N.J.S.A. 54:10A-4(d), (k), -5.
When plaintiff computed its tax liability under these provisions it included its holdings of federal obligations in its net worth tax base and it included income from the same securities in its net income tax base. Most of plaintiff’s federal obligations were U.S. Treasury bonds and notes. After paying the tax plaintiff filed a refund claim. The bank’s position is that a federal statute proscribes any state taxation of federal obliga *465 tions and that New Jersey’s taxation of the bank’s federal holdings is therefore barred by the supremacy clause of the Constitution of the United States. U.S. Const., Art. VI, cl. 2. The Director of the Division of Taxation denied plaintiff’s refund claim and the bank filed a complaint in this court seeking to have the Director ordered to refund some or all of plaintiff’s tax payment. For the reasons set forth below, I hold that the denial of plaintiff’s refund claim was correct because the corporation business tax liability of commercial banks may be calculated based on their ownership of and income from obligations of the federal government.
The congressional enactment that plaintiff relies upon as barring the state taxation of federal obligations is sometimes referred to as the Federal Public Debt Statute, 31 U.S.C.A, § 3124 (formerly 31 U.S.C.A. § 742). In its earlier form that statute was as follows:
Except as otherwise provided by law, all stocks, bonds, Treasury notes and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. [31 U.S.C.A. § 742]
In Werner Machine Co. v. Taxation Div. Director, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956), the Supreme Court of the United States considered the impact of that statutory provision on a New Jersey corporation business tax assessment based in part on the inclusion of the value of certain federal bonds in the corporation’s net worth calculation. The Court affirmed the conclusion of the New Jersey Supreme Court that the corporation business tax was “a bona fide franchise tax” imposed on a corporation for the privilege of having or exercising its corporate franchise in the State, not a tax imposed directly on the property held by the corporation. Id. 350 U.S. at 493, 76 S.Ct. at 535. The Court held:
Since the tax remains the same whatever the character of the corporate assets may be, no claim can be sustained that this taxing statute discriminates against the federal obligations. And since this is a tax on the corporate franchise, it is valid despite the inclusion of federal bonds in the determination of net worth. This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property. [Id. 350 U.S. at 493-494, 76 S.Ct. at 535]
*466 In 1959, after the decision in Werner Machine Co., Congress amended the Federal Public Debt Statute by adding a second sentence. The statutory language in effect for 1977 was as follows:
Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on 'corporations and except estate taxes or inheritance taxes. [31 U.S.C.A. § 742; emphasis supplied]
Plaintiff contends that this version of 31 U.S.C.A. § 742 changed the law dealt with in Werner Machine Co. by prohibiting the inclusion of plaintiffs federal obligations in its tax bases for corporation business tax purposes. Plaintiff relies in large measure for this proposition on a recent decision by the Supreme Court of the United States, American Bank and Trust Company v. Dallas County, 463 US. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983). In that case the Court held that a Texas property tax on bank shares, computed on the basis of the bank’s net assets without any deduction for tax-exempt United States obligations held by the bank, was violative of 31 U.S.C.A. § 742. According to plaintiff, the Court in Dallas County abandoned the “highly formalistic” distinction between taxes directly on as opposed to taxes measured by government securities that it had articulated in the Werner Machine Co. case.
Contrary to plaintiff’s characterization of the Dallas County opinion, however, the Court reaffirmed the distinction between nondiscriminatory franchise taxes measured by tax-exempt obligations and property taxes imposed directly on shares of bank stock. The Court stated:
Prior to the 1959 amendment, franchise and estate and inheritance taxes measured by the value of federal obligations, like bank shares taxes, were upheld on the theory that the tax was levied on the franchise or the transfer of property, rather than on the ownership interest in the federal securities themselves. By expressly exempting franchise and estate and inheritance taxes from the amended [§ 742], Congress manifested its awareness that the new language would broaden significantly the prohibition as it had been *467 construed by the courts. Congress must have believed that franchise and estate and inheritance taxes required federal obligations to “be considered, directly or indirectly, in the computation of the tax”; otherwise, the specific exemptions for these taxes would have been superfluous. There is no reason to conclude that shares taxes are any different. [463 U.S. at --, 103 S.Ct. at 3375, 77 L.Ed.2d at 1079-1080]
Thus, the Court recognized that although franchise taxes require federal obligations to be considered in the computation of the tax contrary to the general focus of § 742, Congress carved out a specific exception to that statute for nondiscriminatory franchise taxes. The Court made the distinction explicit in analyzing the legislative history of the amendment by quoting from both the Senate and House reports as follows:
[T]he [1959] amendment “makes it clear that both the principal and interest on U.S. obligations are exempt from all State taxes except nondiscriminatory franchise, etc., taxes”... S.Rep. No. 909, 86th Cong., 1st Sess., 2 (1959); H.R.Rep. No. 1148, 86th Cong., 1st Sess., 2 (1959). Congress intended to sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified in the amendment.” [463 U.S. at —, 103 S.Ct. at 3377], 77 L.Ed.2d at 1082; emphasis supplied in part]
It is apparent from the Dallas County case that the distinction between nondiscriminatory franchise taxes and taxes imposed directly on government obligations still exists and is very significant in terms of compliance with the Federal Public Debt Statute. However, the distinction is no longer based on a “formalistic” analysis by the Supreme Court.. Rather, it is based on an express enactment of the Congress. Thus, the State’s inclusion of federal obligations in plaintiff’s tax bases under the Corporation Business Tax Act complies with the Federal Public Debt Statute as long as New Jersey’s tax is nondiscriminatory.
The term “nondiscriminatory” as used by Congress in 31 U.S.C.A. § 742 pertains to the treatment for tax purposes of federal obligations as compared with state obligations. The Supreme Court made this clear only last year in Memphis Bank & Trust Company v. Garner, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983). The Court said:
A state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal *468 obligations. See e.g. United States v. County of Fresno, supra [429 U.S. 452] at 462, 50 L.Ed.2d 683, 97 S.Ct. 699 [at 704] (“a state tax on those who deal with the Federal Government” is unconstitutional if the tax “is imposed [un]equally on similarly situated constituents of the State”). Our cases establish, however, that if the “tax remains the same whatever the character of the [property] may be, no claim can be sustained that this taxing statute discriminates against federal obligations.” Werner Machine Co. v. Director of Division of Taxation, supra, [350 U.S.] at 492, 100 L.Ed. 634, 76 S.Ct. 534 (1956). [Id. 459 U.S. at 397-398, 103 S.Ct. at 696, 74 L.Ed.2d at 567-568]
Since federal and state obligations have continuously been included in a corporation's net worth and net income tax bases under the Corporation Business Tax Act, as the parties have stipulated, the act is nondiscriminatory within the intent of 31 U.S.C.A. § 742 as construed by the Supreme Court.
Even though the act is nondiscriminatory as that term is used in the Federal Public Debt Statute, plaintiff argues that the treatment of commercial banks under the act was discriminatory in 1977 under the Equal Protection Clause of the United States Constitution. The premise for this contention is that in 1977 commercial banks such as plaintiff were required to include interest from both federal and state obligations in their franchise tax base while competing financial institutions were not required to do so to the same extent.
In 1977, New Jersey savings banks, building and loan associations, and savings and loan associations were subject to an annual franchise tax pursuant to the Savings Institution Tax Act, N.J.S.A. 54:10D-1 et seq. Until it was amended by L. 1979, c. 160, § 1, effective January 1,1979, the latter act did not require the inclusion in a taxpayer’s tax base of income from any state or federal obligations. Based on an opinion of the Attorney General of New Jersey, income from Federal National Mortgage Association notes was includible because they were not federal obligations. According to the introductory statement to the bill which was enacted as L. 1979, c. 160, the law was amended to bring it into compliance with the Federal Public Debt Statute by including income from both federal and state obligations in the tax base, thereby eliminating any potential discrimination against federal obligations.
*469 However, the possible existence of a defect in the Savings Institution Tax Act prior to 1979 has no bearing on the constitutionality of the Corporation Business Tax Act in 1977. The constitutionality of the latter act in the context of an equal protection challenge depends upon whether it was reasonable for the Legislature to distinguish between commercial banks and competing financial institutions in matters of taxation. Stated another way, “the crucial constitutional issue is whether there is any reasonably conceivable state of facts which would afford a rational basis for the classification” of financial institutions. See McKenney v. Byrne, 82 N.J. 304, 316, 412 A.2d 1041 (1980).
The answer to this inquiry is readily apparent. The Legislature has consistently classified commercial banks differently for all purposes. Both savings and loan associations and building and loan associations are established and governed pursuant to the Savings and Loan Act (1963), N.J.S.A. 17A2B-1 et seq. Commercial banks and savings banks are established and governed pursuant to the Banking Act of 1948, N.J.S.A. 17:9A-1 et seq. According to the terms of that statute savings banks have less extensive powers than commercial banks. In Tri-County Savings and Loan Assoc. v. Banking Commissioner, 170 N.J. Super. 576, 407 A.2d 844 (App.Div.1979), certif. den. 82 N.J. 286, 412 A.2d 792 (1980), the court considered the scope of the investment powers granted to savings and loan associations by the Legislature. The court observed that:
[W]hile commercial banks are given broad powers to invest in and otherwise deal with the virtual gamut of debt obligations, including time sales contracts, savings banks do not have such powers but are limited to investment in “installment loans” in the narrowest sense of those terms____ Since savings banks cannot invest in or deal in time sales contracts, savings and loan associations cannot do so either. [170 N.J.Super. at 583, 407 A.2d 844]
The court further stated:
In short, there is no indication that the Legislature ever intended to make savings banks (and by extrapolation savings and loan associations) virtually identical to, as opposed to merely competitive with, commercial banks. [Id. at 584, 407 A.2d 844]
This different treatment of commercial banks evidences a state of facts known to the Legislature that affords a rational *470 basis for the taxation of commercial banks on a basis different from that of other financial institutions. McKenney v. Byrne, supra. Thus, plaintiff’s contention on this point has no merit.
Plaintiff’s next argument concerns the taxability of state and local obligations. In 1976, plaintiff held bonds of the N.J. Educational Facilities Authority, the N.J. Health Facilities Authority, the N.J. Housing Finance Agency, the N.J. Mortgage Finance Agency, Rutgers, the State University, and of numerous New Jersey counties, municipalities, boards of education and sewer authorities. Since the various state and local bonds were issued pursuant to enabling legislation that declared income from them to be tax exempt, as is the case with federal obligations, plaintiff contends in its trial brief that its holdings of state and local obligations should not be considered as part of its tax bases under the Corporation Business Tax Act.
Plaintiff did not allege in its complaint nor preserve as an issue in the pretrial order that its assessment should not have been based on the inclusion of state and local bonds or the income from them. Nonetheless, both parties addressed this issue in their briefs and I will deal with it because it is an actual dispute between parties who have a significant stake in the outcome. Cf. N.J. Assoc. for Retarded Citizens v. Human Services Department, 89 N.J. 234, 241, 445 A.2d 704 (1982); Logistics Industries Corp. v. Taxation Div. Director, 2 N.J.Tax 484, 488-489 (Tax Ct.1981).
One typical example of the various provisions in enabling legislation relied on by plaintiff is the following, applicable to bonds issued by local boards of education:
Any and all bonds issued pursuant to this act shall be conclusively deemed to be governmental obligations for governmental and public purposes, and the same, together with any interest thereon, shall be forever exempt from any and every tax and shall be excluded from the calculation of any and every tax, wherever enacted, of whatever nature and however levied, assessed or calculated, whether during the lifetime or at or after or by reason of the death of any holder, [N.J.S.A. 18A:24-80]
Despite such language, the Director has consistently required corporations to include both federal and state obligations in their tax bases for corporation business tax purposes. See *471 N.J.A.C. 18:7-5.2(a)(2). The Attorney General has corroborated the Director’s policy in a formal opinion stating that bonds of the Economic Development Authority which were otherwise exempt were includible in a taxpayer’s tax bases for corporation business tax purposes. Att’y Gen. F.O. 1977, No. 7. The enabling legislation for EDA bonds is substantially the same as it is for local board of education bonds. See N.J.S.A. 34:1B-15. The most significant difference between the two provisions is that N.J.S.A. 34:1B-15 states that the obligations issued pursuant to its authority shall “be free from taxation of every kind by the State except for transfer, inheritance, and estate taxes----” Emphasis supplied.
In examining whether income from such bonds was includible in a corporation’s net income tax base within the intent of the Corporation Business Tax Act, the Attorney General concluded that:
In construing a statute, it is to be assumed that the Legislature is familiar with its own enactments and the judicial and administrative interpretation thereof. Barringer v. Miele, 6 N.J. 139, 144 [77 A.2d 895] (1951). The failure of the Legislature to specifically exempt franchise taxes in its enactment of N.J.S.A. 34:1B-15 is a significant indication of legislative intent. It is persuasive that the Legislature did not intend to qualify the principle enunciated in Werner Machine and the administrative implementation of these statutes by the Division of Taxation as it relates to the EDA bonds. Thus, the exemption established by N.J.S.A. 34:1B-15 clearly does not affect the imposition of the tax on the value, income and gain on transfer of EDA bonds under the corporation business tax____
The Legislature has never amended any of the enabling acts cited by plaintiff to provide expressly that its intent was to exempt the various state and local obligations from inclusion in corporation business tax bases. In fact, bills to accomplish just such an amendment have not been adopted. Senate Bills 952 (1980) and 565 (1982). A strong inference may therefore be drawn that the Attorney General’s formal opinion is consistent with legislative intent. State v. Son, 179 N.J.Super. 549, 553, 432 A.2d 947 (App.Div.1981).
More importantly, if the enabling legislation were construed to prohibit inclusion of these obligations in corporation business tax bases, a serious constitutional question would arise. If the *472 state and local obligations were not includible but federal obligations were, the Corporation Business Tax Act might well be said to discriminate in favor of state obligations and against federal obligations in violation of the Federal Public Debt Statute and thus of the Supremacy Clause of the United States Constitution.
Given this potential constitutional problem, a basic principle of statutory construction becomes very significant. This principle is that
[e]ven though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation. [State v. Profaci, 56 N.J. 346, 350, 266 A.2d 579 (1970)] .
It is certainly reasonable to' construe the various enabling act provisions as the Attorney General has done. His construction is in keeping with another well-recognized principle, that exemptions from taxation are strictly construed. Container Ring Co. v. Taxation Div. Director, 1 N.J.Tax 203, 208 (Tax Ct.1980), aff’d 4 N.J.Tax 527 (App.Div.1981). It is also in keeping with the State’s desire to protect its revenue base, as was demonstrated when the Legislature amended the Savings Institution Tax Act in 1979 to make it comport with the Federal Public Debt Statute. Accord National Bank of Alaska v. Alaska Dept. of Revenue, 642 P.2d 811 (Alaska Sup.Ct.1982); Connecticut Bank and Trust Co. v. Tax Commissioner, 178 Conn. 243, 423 A.2d 883 (Sup.Ct.1979). I therefore hold that plaintiff’s net worth and net income tax bases appropriately included the value of and the income from the bank’s holdings of state and local obligations.
The final argument plaintiff raises is that the “save harmless” provision of the Corporation Business Tax Act is contrary to the Federal Public Debt Statute and thus unconstitutional under the Supremacy Clause. The save harmless provision provided for a minimum tax liability for commercial banks so that the State’s revenue was not diminished, in the transition to the corporation business tax from the bank stock *473 tax, N.J.S.A. 54:9-1 et seq., which was repealed when these banks became subject to the Corporation Business Tax Act. Under the save harmless formula for 1977, a bank was required to pay an amount equal to what it had paid in 1975 in bank stock tax unless its obligation under the new taxing scheme was greater. N.J.S.A. 54:10A-34. In effect, plaintiffs challenge is to the former bank stock tax as it is reflected in the save harmless provision of the Corporation Business Tax Act. However, it was stipulated that plaintiffs 1977 tax liability had been computed in accordance with the new amendments to the Corporation Business Tax Act. The save harmless provision of the act would have become operative only if the court had sustained plaintiffs allegations and eliminated federal obligations from the bank’s tax bases. Since plaintiff has not prevailed in any of its several attacks on the constitutionality of the Corporation Business Tax Act, the issue involving the save harmless provision is moot and will not be addressed.
The Director’s denial of plaintiff’s refund claim is therefore affirmed in all respects.

Prior to 1976 commercial banks were subject to a state tax on their capital stock. N.J.S.A. 54:9-1 et seq. The bank stock tax was repealed by the same law that amended the Corporation Business Tax Act. L. 1975, c. 170, § 3.