GARFIELD TRUST COMPANY, PLAINTIFF-APPELLANT, v.
DIRECTOR, DIVISION OF TAXATION,
DEFENDANT-RESPONDENT.

Argued January 22, 1986—Decided May 22, 1986.

*Glenn T. Leonard* argued the cause for appellant (*Cecchi and Politan,* attorneys).

*Harry Haushalter,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*William S. Robertson, III,* argued the cause for *amici curiae* Summit and Elizabeth Trust Co., et al. (*Williams, Caliri, Miller & Otley,* attorneys; *William S. Robertson* and *Bruce K. Adler,* on the briefs).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal presents the questions whether, first, the Federal Public Debt Statute, 31 *U.S.C.A.* § 742, and second, the state enabling legislation for debt obligations, exempt the principal and interest income of federal and state obligations from inclusion in the net worth and net income bases for calculating the New Jersey Corporation Business Tax (CBT). A third question of discriminatory treatment is presented only if the federal statute is interpreted to require inclusion of the principal and interest income of federal obligations in these tax bases at the same time that the state legislation is interpreted to require exclusion of the principal and interest income of state obligations, or *vice versa*. To answer these questions, we must determine whether the CBT is a *bona fide* franchise tax, whether the enabling legislation exempts state obligations from such a franchise tax, and finally whether the CBT is a *nondiscriminatory* franchise tax.

The petitioner, Garfield Trust Company (GTC), now known as County Trust Company, is a commercial banking corporation organized under the laws of the State of New Jersey.[1] In its CBT return for the tax year ending December 31, 1976, GTC included the face value of federal as well as state and local obligations in its net worth tax base, and included interest income from these securities in its net income tax base. After paying the tax, GTC filed a refund claim for $89,897 with respondent, Director of the Division of Taxation (Director), who denied the claim.

GTC then filed a complaint with the Tax Court, which affirmed the Director's denial of GTC's refund claim. 6 *N.J. Tax* 462 (1984). The Appellate Division in a *per curiam* opinion affirmed the Tax Court substantially for the reasons expressed in that court's opinion, 7 *N.J.Tax* 664.

---

[1]Numerous other commercial banking corporations have participated in this case as *Amici Curiae*.

We granted GTC's petition for certification. 102 *N.J.* 303 (1985). We affirm.

I

■ The New Jersey Corporation Business Tax Act (the Act), *N.J.S.A.* 54:10A–1 to –40, was enacted in 1945 (*L.* 1945, *c.* 162) on the recommendation of the *Report of the Commission on Taxation on Intangible Property* (1945), which had endorsed the imposition of a "franchise tax" in lieu of the existing *ad valorem* tax on intangible property. The Act now requires, as it then required, a corporation to pay an annual franchise tax "for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State." *N.J.S.A.* 54:10A–2. The tax now is computed by adding together prescribed percentages of a net worth base and an entire net income base. *N.J.S.A.* 54:10A–4(d), 4(k), and 5.

The net worth base is broadly defined under *N.J.S.A.* 54:10A–4(d), constituting "in essence the stockholders' book equity in the corporation ...," subject to some adjustments not relevant here. *F.W. Woolworth Co. v. Director, Div. of Taxation,* 45 *N.J.* 466, 473 (1965). The statutory definition is all-inclusive, encompassing the principal value of all securities owned by the corporate taxpayer. *Motor Fin. Corp. v. Director, Div. of Taxation,* 129 *N.J.Super.* 19, 23–24 (App.Div.), certif. den., 66 *N.J.* 319 (1974).

The entire net income base is *prima facie* the amount of taxable income reported for federal income tax purposes, less net operating loss deductions and special deductions. *N.J.S.A.* 54:10A–4(k). But the Legislature has provided for the following adjustments to the federal taxable income base:

(2) Entire net income shall be determined without the exclusion, deduction or credit of:

(A) The amount of any specific exemption or credit allowed in any law of the United States imposing any tax on or measured by the income of corporations;

(B) Any part of any income from dividends or interest on any kind of stock, securities or indebtedness, except as provided in subsection (k)(1) [which excludes specified dividend income from the tax base] of this section.... [*N.J. S.A.* 54:10A–4(k)(2).]

Therefore, the entire net income base *includes* interest income that is derived from any kind of securities or indebtedness, notwithstanding any specific federal or state exemption or exclusion.

## II

■ In 1976, the Federal Public Debt Statute provided that: Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. *This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.* [31 *U.S.C.A.* § 742 (emphasis added).2]

The nondiscriminatory franchise tax exception to this statute's exemption of the principal and interest income of federal obligations from "every form of taxation" stems from *Werner Machine Co. v. Director, Div. of Taxation,* 17 *N.J.* 121 (1954), aff'd, 350 *U.S.* 492, 76 *S.Ct.* 534, 100 *L.Ed.* 634 (1956). To come within this exception, and therefore to include the principal and interest income of federal obligations in the net worth and net income bases for computing the CBT, that tax must be a *bona*

---

2The present Federal Public Debt Statute, 31 *U.S.C.A.* § 3124, as amended by Pub.L. 97–258, Sept. 13, 1982, reads in relevant part:

(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

(1) a *nondiscriminatory franchise tax* or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

(2) an estate or inheritance tax. [ (Emphasis added).]

*fide* franchise tax, and moreover a *nondiscriminatory* franchise tax.

When *Werner Machine* was decided, the Corporation Business Tax Act used only a net worth base. In that case, this Court considered the validity of the Director's policy of including in the net worth base the face value of federal bonds otherwise exempted from taxation by federal law. The Federal Public Debt Statute then provided:

> Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. [31 *U.S.C.A.* § 742.]

In *Werner Machine,* we determined that the CBT was in fact as well as in name an "annual franchise tax" (or a *"bona fide* franchise tax"). 17 *N.J.* at 125. Moreover, we found "nothing in the statute indicative of a tax upon the property owned by the corporation, nor upon a franchise as 'property.'" *Id.* at 126. Since the CBT thus was not imposed directly upon the underlying property of a corporation, but rather upon its franchise or privilege to do business in the state, this Court held that 31 *U.S.C.A.* § 742 did not operate to exempt the face value of the federal bonds from inclusion in the net worth base.

The United States Supreme Court affirmed this decision, stating:

> [W]e find no basis in this instance for not accepting the state court's conclusion that this tax is not imposed directly on property held by the corporation.... Since the tax remains the same whatever the character of the corporate assets may be, no claim can be sustained that this taxing statute discriminates against the federal obligations. And since this is a tax on the corporate franchise, it is valid despite the inclusion of federal bonds in the determination of net worth. *This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property.* [*Werner Machine,* 350 *U.S.* at 493–94, 76 *S.Ct.* at 535, 100 *L.Ed.* at 637 (emphasis added).]

Hence, the Supreme Court decision in *Werner Machine* clearly established that the CBT, as a *bona fide* franchise tax, was not imposed directly upon the underlying property of a corporate taxpayer, and therefore that 31 *U.S.C.A.* § 742 did not operate to exempt the federal bonds from the net worth measure of the

tax.  In 1959, Congress amended the Federal Public Debt Statute by adding a second sentence to incorporate the *Werner Machine* holding.[3]

Shortly after *Werner Machine,* in 1958, the net income base was enacted (*L.*1958, *c.* 63), becoming effective for the 1959 and subsequent tax years.  *N.J.S.A.* 54:10A–32.[4]  GTC and *Amici* grant that *Werner Machine* held that the self-designated "annual franchise tax" then exacted under the net worth base of the Corporation Business Tax Act was in fact as well as in name a franchise tax.  Nevertheless, they argue that that case is now inapposite because the addition of the net income base transformed the CBT from a franchise tax to an income tax. This argument ignores the fact that the United States Supreme Court noted in *Werner Machine:* "This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt *income* or *property,* even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property."  350 *U.S.* at 494, 76 *S.Ct.* at 535, 100 *L.Ed.* at 637 (citations omitted) (emphases added).[5]  Hence, the

---

[3]The amendment is the italicized portion of 31 *U.S.C.A.* § 742 set forth *supra* at p. 424.

[4]The Director, by regulations initially adopted in 1959 and presently incorporated in *N.J.A.C.* 18:7–5.2(a)(2), has provided that entire net income shall include:  ,

> All interest income from sources within the United States, which has not been included in computing Federal taxable income, *including interest on State and Municipal bonds and certain obligations of the United States and its instrumentalities....*  (emphasis added)

[5]The two cases most directly on point are mentioned in the annotation immediately following *Werner Machine:*

> See *Pacific Co. v. Johnson* (1932) 285 US 480, 76 L ed 893, 52 S Ct 424 (upholding franchise tax upon entire net income of corporation, including that from tax-exempt municipal bonds), and *Tradesmens Nat. Bank v. Oklahoma Tax Com.* (1940) 309 US 560, 84 L ed 947, 60 S Ct 688 (upholding state franchise tax on national banking association, measured by association's net income including tax-exempt income from federal

rationale of *Werner Machine,* which upheld the inclusion of the principal of federal obligations in the net worth base, applies equally to uphold the inclusion of the interest income from such obligations in the net income base. The CBT is no more a direct tax upon a corporation's net income than upon its net worth. In both instances the bases are utilized merely as measures of the franchise tax.

Furthermore, we have observed that "[t]he income tax portion was added as simply another element of the 1945 franchise tax, to provide an increase in the State's revenues...." *F.W. Woolworth Co. v. Director, Div. of Taxation,* 45 *N.J.* 466, 473 (1965). Similarly, we have stated that "[t]he net income measure of the tax, as another element in addition to net worth, was inserted by *L.* 1958, *c.* 63, pursuant to the recommendation of the *Ninth Report of the Commission on State Tax Policy* (1958)." *Roadway Express, Inc. v. Director, Div. of Taxation,* 50 *N.J.* 471, 485 (1967), app. dism. 390 *U.S.* 745, 88 *S.Ct.* 1443, 20 *L.Ed.*2d 276 (1968). "The essential purpose," we continued, "was to provide an increase in the state's revenues." *Id.* The essential purpose hence was not to change the conceptual nature of the tax, which the Legislature continues to dub an "annual franchise tax," *N.J.S.A.* 54:10A–5, to an income tax.[6]

---

securities). In both of these cases the nondiscriminatory nature of the tax was held to bar any finding of invalidity.

[Annotation, State taxation of federal securities and obligations—federal cases, 100 *L.Ed.* 637, 638 (1956).]

[6]GTC and *Amici* claim that in *Roadway Express* we recognized that the so-called franchise tax calculated in part on the basis of net income had "all the attributes of a direct levy on income" and therefore that that case requires the conclusion that the CBT as it presently exists is not a franchise tax. The relevant passage in *Roadway Express* needs to be read in context:

The essential purpose was to provide an increase in the state's revenues. It may be surmised that historical antipathy in New Jersey to an income tax as such led to inclusion of it rather as another element of the franchise tax, although *otherwise it has all the attributes of a direct levy on income.* [50 *N.J.* at 485.]

In sum, we conclude that the CBT always has been and still is an annual franchise tax. The holding and implications of *Werner Machine* retain their vitality through recent decisions of both this Court and the United States Supreme Court. *See American Bank and Trust Co. v. Dallas*, 463 *U.S.* 855, 103 *S.Ct.* 3369, 77 *L.Ed.*2d 1072 (1983); *Memphis Bank & Trust Co. v. Garner*, 459 *U.S.* 392, 103 *S.Ct.* 692, 74 *L.Ed.*2d 562 (1983). Therefore, *inclusion* of the face value and interest income of federal obligations in the bases for calculating the CBT does not by its own force violate the Federal Public Debt Statute. However, this statute also requires that the franchise tax be "nondiscriminatory" in order for the federal obligations

---

To have all the attributes of a direct levy on income, however, is not the same as *otherwise* to have all the attributes of a direct levy on income. Compare this Court's remark in *Household Finance Corp. v. Director of Div. of Taxation*, 36 *N.J.* 353, 358, app. dism., 371 *U.S.* 13, 83 *S.Ct.* 41, 9 *L.Ed.*2d 49 (1962): While the "excise tax may gather the hue of a property tax . . . it is the franchise to do local business that is being valued rather than any specific piece of property devoted to it." (quoted in *Motor Finance Corp. v. Director, Div. of Taxation*, 129 *N.J.Super.* 19, 23 (App.Div.1974)). A franchise tax that gathers the hue of, or otherwise has the attributes of, an income tax is not *ipso facto* an income tax. *Silent Hoist & Crane Co. v. Director, Div. of Taxation*, 100 *N.J.* 1, 12 (1985), despite its overemphasis, is only apparently to the contrary ("In essence, the [net income measure] is a corporate income tax, although at the time [of its addition] denominated a franchise tax due to a surmised 'historical antipathy in New Jersey to an income tax as such.'" (quoting *Roadway Express*, 50 *N.J.* at 485)). At the time *F. W. Woolworth* and *Roadway Express* were decided, New Jersey imposed no general direct personal or corporate tax measured by or levied upon income. Since then, the Legislature has enacted a Corporate Income Tax (CIT). *N.J.S.A.* 54:10E–1 to –24. This undercuts the claim that the CBT is no longer a franchise tax but instead an income tax.

Moreover, the fact that the threshold activities by corporations triggering the imposition of the CBT, or the privileges that constitute the incidence of the tax, are the same today as they were when *Werner Machine* was decided confirms that the CBT remains a franchise tax.

Finally, when Congress adopted the present Federal Public Debt Statute, 31 *U.S.C.A.* § 3124, quoted *supra* at note 2, it was well aware that many states, like New Jersey, calculate their corporate franchise taxes on the basis of net income. Yet Congress retained the exception for nondiscriminatory franchise taxes without eliminating such state taxes from its reach.

to be included in these tax bases. And so, the federal statute allows inclusion of the principal and income from federal obligations only if the state enabling legislation likewise permits *inclusion* of the principal and income from state obligations. *Memphis Bank & Trust Co.*, 459 *U.S.* at 397–98, 103 *S.Ct.* at 695–96, 74 *L.Ed.*2d at 567–68; *Werner Machine*, 350 *U.S.* at 493–94, 76 *S.Ct.* at 534–35, 100 *L.Ed.* at 637. If the state enabling legislation requires *exclusion*, then the admittedly *bona fide* franchise tax would be impermissibly discriminatory. Our next inquiry, therefore, is whether the state enabling legislation requires exclusion or inclusion.

## III

■ GTC and *Amici* contend that the state enabling statutes for the state and local bonds relevant here unequivocally exempt the principal and income of state obligations from inclusion in the bases for calculating the CBT. GTC offers the following exemption, applicable to bonds issued by local boards of education, as one typical example:

> Any and all bonds issued pursuant to this act shall be conclusively deemed to be governmental obligations for governmental and public purposes, and the same, together with any interest thereon, *shall be forever exempt from any and every tax* and *shall be excluded from the calculation of any and every tax, whenever enacted, of whatever nature and however levied, assessed or calculated,* whether during the lifetime or at or after or by reason of the death of any holder.
>
> [*N.J.S.A.* 18A:24–80 (emphases added).]

Similarly, *Amici* offer the following exemption, applicable to bonds issued by the New Jersey Economic Development Authority (EDA), as "exemplary of the enabling statutes generally": "free from taxation of every kind by the State except for transfer, inheritance and estate taxes...." *N.J.S.A.* 34:1B–15.

Despite the language of enabling statutes such as *N.J.S.A.* 18A:24–80 and *N.J.S.A.* 34:1B–15, the Director consistently has required corporations to include in their bases for computing franchise taxes the principal and interest income derived from (otherwise) tax exempt obligations issued by state authorities.

*See N.J.A.C.* 18:7–5.2(a)(2), quoted *supra* note 4.[7] The Attorney General of New Jersey corroborated the Director's policy in Formal Opinion 7 (1977), advising the Department of Labor and Industry: "Pursuant to the principle established in the *Werner Machine* case, the principal of EDA bonds [issued under *N.J. S.A.* 34:1B–15] should be reflected in the net worth base of the [CBT] [and] the interest income and gain derived from the transfer of EDA bonds should be reflected in the net income tax base of the [CBT]. . . ." The Formal Opinion reasoned that:

> In construing a statute, it is to be assumed that the Legislature is familiar with its own enactments and the judicial and administrative interpretations thereof. *Barringer v. Miele,* 6 *N.J.* 139, 144 (1951). The failure of the Legislature to specifically exempt franchise taxes in its enactment of *N.J.S.A.* 34:1B–15 is a significant indication of legislative intent. It is persuasive that the Legislature did not intend to qualify the principle enunciated in *Werner Machine* and the administrative implementation of these statutes by the Division of Taxation as it relates to the EDA bonds. Thus, the exemption established by *N.J.S.A.* 34:1B–15 clearly does not affect the imposition of the tax on the value, income and gain on transfer of EDA bonds under the corporation business tax and on the gain derived from the transfer of EDA bonds under the savings institution tax.
>
> [Formal Opinion 7 at 6.]

The Tax Court, in affirming the Director's policy and the Attorney General's opinion, likewise relied upon the Legislature's acquiescence in the judicial and administrative interpretation of the Corporation Business Tax Act and the bond enabling statutes—especially its failure, against this background, to amend the enabling statutes specifically to exempt state and local obligations from inclusion in the CBT bases. 6 *N.J.Tax* at 471.

*Amici* urge though that the Legislature's failure to amend the EDA enabling statute is inconsequential, contending that the Legislature could have refused to amend it for a variety of reasons (including that the amendment was unnecessary because the statute already exempted EDA bonds from the CBT).

---

[7]Likewise, the Director consistently has required corporations to include in the CBT tax bases the principal and interest income derived from federal obligations otherwise exempted from taxation.

This caveat against drawing inferences from legislative acquiescence might be compelling were this a case where the Legislature had given *no consideration whatsoever* to this issue. However, opponents of the Director's policy and the Attorney General's opinion twice have introduced an amendment to the EDA enabling statute whose express purpose was to overrule them (and thus to enact the interpretation advocated here by GTC and *Amici*), each time without success. Senate Bills 952 (1980) and 565 (1982).[8] The stricture against drawing inferences one way or another from legislative acquiescence in judicial and administrative interpretation of legislative enactments atrophies with every such unsuccessful introduction.

This acquiescence has been manifested not only in the Legislature's failure to amend the EDA enabling statute in the aftermath of Formal Opinion 7, but also in its decision to amend the Savings Institution Act to bring it into line with the Attorney General's advisements as to the implications of *Werner Machine* for the interpretation of the Corporation Business Tax Act. The previous provisions of the Savings Institution Tax Act, *L.* 1973, *c.* 31, were described as follows:

Net income under that statute, although broadly defined to include income from all sources as well as gains derived from the sale of capital assets (N.J.S.A. 54:10D–2(d)), *specifically excludes* interest or dividends derived from obligations issued by the State of New Jersey or its authorities. N.J.S.A. 54:10D–2(d)(1)(b)(i). This provision *clearly exempts* the interest income from the EDA bonds from being included in the net income tax base of the savings institution tax. The savings institution tax, however, does not exclude profits derived from the sale of such obligations from being reflected in its tax base. [Formal Opinion 7 at 4 (emphases added).]

The Attorney General advised that "[t]he interest income derived from EDA bonds *should not* be included in the net income tax base of the savings institution tax under the specific provi-

---

[8]Similar amendments (Senate Bills 6951 (1980) and 561 (1982)) were proposed with regard to the exemption accorded to bonds issued under *N.J.S.A.* 26:2I–16 of the New Jersey Health Care Facilities Financing Authority Law, *N.J.S.A.* 26:2I–1 to –39. These proposed amendments likewise were not adopted.

sions of that statute." *Id.* at 7 (emphasis added). At the same time, he advised that the interest income derived from EDA bonds *should* be included in the net income tax base of the corporation business tax, since the latter statute lacked a counterpart to the former's specific exemption and moreover was governed by *Werner Machine.*

The Legislature responded to this part of Formal Opinion 7 by deleting the provision specifically excluding interest income generated by the EDA bonds from the net income tax base for calculating the savings institution tax. It explained the amendment as follows:

> This bill would amend the Savings Institution Tax Act to meet the objections raised by a recent opinion of the Attorney General of New Jersey that the present law violates the Federal Public Debt Statute in discriminating against the United States Treasury obligations. To avoid such taxation [sic: discrimination], this bill would include, in a tax base, income from both Federal and State obligations.... [Introductory Statement, Assembly, No. 3326—*L.*1979, *c.* 160.]

The Legislature's failure to enact Senate Bills 952 (1980) and 565 (1982), together with its action in amending the Savings Institution Tax Act, conclusively establishes that the Legislature intended to include in the CBT bases the principal of and interest income from state obligations. For in amending the Savings Institution Tax Act, the Legislature implicitly accepted the Formal Opinion's advisement as to inclusion of interest income in the net income base for corporation business tax purposes. Moreover, the Savings Institution Tax Act's original specific exemption of interest income generated by state obligations from the net income tax base shows that the Legislature knows how to make this sort of specific exemption when it intends to do so; the absence of a counterpart specific exemption in the Corporation Business Tax Act suggests that the Legislature did not intend such an exemption. This suggestion is confirmed by the Legislature's action in response to Formal Opinion 7, which was not to *adopt* a specific exemption in the latter statute but to *delete* the specific exemption in the former.

Furthermore, the Legislature took this action avowedly to avoid violating the Federal Public Debt Statute (as interpreted

in *Werner Machine*) by discriminating in favor of state obligations and against federal obligations, thereby running afoul of the Supremacy Clause of the United States Constitution. This supports the soundness of the Tax Court's invocation of the basic principle of statutory construction that

[e]ven though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation.

[6 *N.J.Tax* at 472 (quoting *State v. Profaci*, 56 *N.J.* 346, 350 (1970)).]

Discharging this duty, we, like the Tax Court, interpret the state enabling legislation not to exclude state obligations from the CBT bases.

Our interpretation likewise comports with the principle that tax exemptions are to be strictly construed.[9] This principle, unquestionably applicable to tax exemptions that are part of an overall tax statute, applies *a fortiori* to exemptions that are part of bond enabling statutes—for in enacting an overall tax statute, the Legislature is likely to be more cognizant of the general rules from which it must clearly state specific exemptions than it is in enacting enabling statutes for state and local debt obligations.

Finally, this interpretation harmonizes the statutory provision requiring that "[e]ntire net income shall be determined without the exclusion ... of [a]ny income from dividends or interest on any kind of stock, securities or indebtedness...." (*N.J.S.A.* 54:10A–4(k)(2)) with the enabling legislation exempting state and local debt obligations from "taxation of every kind...." (*N.J.S.A.* 34:1B–15). The words "taxation of every kind" by themselves no more "plainly" dispose of the questions presented in this case than do the words "any kind of stock, securities

---

[9]Moreover, our interpretation is in keeping with the Legislature's concern to protect its revenue base, which was evinced both in its amendment of the Savings Institution Tax Act and its failure to amend either the Corporation Business Tax Act or the EDA bond enabling statute. We deny the motion of *Amici* to strike certain portions of the oral argument of respondent.

or indebtedness," nor than did the words "shall be exempt from taxation" in the original Federal Public Debt Statute prior to *Werner Machine*. As between a general rule forbidding exclusion (*N.J.S.A.* 54:10A–4(k)(2)) and a general exemption requiring exclusion (*N.J.S.A.* 18A:24–80 and *N.J.S.A.* 34:1B–15), the latter must bear the burden of clearly stating a specific exemption—all the more so against the background of the judicial and administrative interpretation of the basic provisions of the Corporation Business Tax Act. The Legislature has not clearly stated such a specific exemption here.

In short, we hold that these sound principles of statutory construction support our conclusion that the Legislature intended to require the inclusion of the principal and interest income of state and local obligations in the net worth and net income bases for calculating the corporation business tax.

## IV

We have concluded that the Federal Public Debt Statute by its own force does not exempt the principal and interest income of federal obligations from inclusion in the net worth and net income bases for computing the CBT, and that the state enabling legislation does not exempt the principal and interest income of state obligations from inclusion in these CBT bases. And we have observed that both federal and state obligations consistently have been included in these bases. The term "nondiscriminatory" in the Federal Public Debt Statute pertains to the treatment for tax purposes of federal obligations as compared with state obligations. *Memphis Bank & Trust Co. v. Garner,* 459 *U.S.* at 397–98, 103 *S.Ct.* at 695–96, 74 *L.Ed.* 2d at 567–68; *Werner Machine,* 350 *U.S.* at 493–94, 76 *S.Ct.* at 534–35, 100 *L.Ed.* at 637. We therefore hold that the corporation business tax is not only a *bona fide* franchise tax, but also a *nondiscriminatory* franchise tax.

Accordingly, we affirm the judgment of the Appellate Division.

*For affirmance*—Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—5.

*For reversal*—none.