638 A.2d 805

BRUNSWICK CORPORATION, A DELAWARE CORPORATION, PLAINTIFF–APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–RESPONDENT.

Argued November 9, 1993—Decided March 30, 1994.

108

Garibaldi, J,, filed dissenting opinion, in which Clifford, J., joined.

*Charles M. Costenbader* and *Paul H. Frankel* argued the cause for appellant (*Stryker, Tams & Dill,* attorneys; *Charles H. Friedrich,* on the briefs).

*Margaret A. Holland,* Deputy Attorney General, argued the cause for respondent (*Fred DeVesa,* Acting Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

PER CURIAM.

Brunswick Corporation challenges the authority of the Director of the Division of Taxation (Director) to adopt a regula-

tion, *N.J.A.C.* 18:7-8.5(b), that adjusts the manner of calculating franchise taxes under the New Jersey Corporation Business Tax Act (CBTA). The CBTA assesses a franchise tax on all corporations doing business in New Jersey according to a business allocation factor that measures a corporation's business activity in the State. That factor consists of three elements: real and tangible personal property, receipts, and payroll. *N.J.S.A.* 54:10A-6(A).

The regulation at issue adjusts the property factor by including leased property in the calculation. *N.J.S.A.* 54:10A-6(A) (section 6(A)) defines the property factor as "[t]he average value of the taxpayer's real and tangible personal property within the State during the period covered by its report divided by the average value of all the taxpayer's real and tangible personal property wherever situated during such period...." Before 1986, the year in which the Director promulgated *N.J.A.C.* 18:7-8.5(b), the Director had interpreted section 6(A) as including only property that was owned.

The Tax Court sustained the Director's authority to adopt the regulation, 11 *N.J.Tax* 530 (1990), and the Appellate Division affirmed substantially for the reasons stated by the Tax Court, 13 *N.J.Tax* 136 (1993). We granted Brunswick's petition for certification, 134 *N.J.* 476, 634 *A.*2d 523 (1993), and likewise affirm substantially for those reasons.

 In light of the dissent, we add the following comments. As the dissent acknowledges, *post* at 113, 638 *A.*2d at 808, administrative regulations are presumptively valid. *GE Solid State v. Director, Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468 (1993). Contrary to the dissent, *post* at 113, 638 *A.*2d at 808, the Legislature has vested the Director with broad authority to adjust the property factor.

The Director's authority to define that factor derives from two sections of the CBTA: *N.J.S.A.* 54:10A-8 (section 8) and *N.J.S.A.* 54:10A-27 (section 27). Section 8 provides:

If it shall appear to the [Director] that an allocation factor determined pursuant to section 6 does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:

(a) excluding one or more of the factors therein;

(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);

(c) excluding one or more assets in computing entire net worth; or

(d) excluding one or more assets in computing an allocation percentage; or

(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.

Section 27 provides: "[t]he [Director] shall prescribe and issue such rules and regulations, not inconsistent herewith, for the interpretation and application of the provisions of this act, as he may deem necessary."

Through sections 8 and 27, the Legislature has painted with a broad brush, obviously intending that the Director would fill in the details through regulations. *See, e.g., Reuben H. Donnelley Corp. v. Director, Div. of Taxation,* 128 *N.J.* 218, 224, 607 *A.*2d 1281 (1992) (stating Director has broad authority to adjust business allocation factor to reflect more accurately taxpayer's New Jersey business activities); *F.W. Woolworth v. Director, Div. of Taxation,* 45 *N.J.* 466, 498, 213 *A.*2d 1 (1965) ("The various permissible means of adjustment specified by section 8 are broad indeed, demonstrating a wide view of the authority."); *International Paper Co. v. Director, Div. of Taxation,* 11 *N.J.Tax* 147, 166 (Tax 1990) (stating Director authorized to adjust allocation factors " 'to avoid perceived unfairness or inequity in the application of apportionment formulas' ") (quoting *Hess Realty Corp. v. Director, Div. of Taxation,* 10 *N.J.Tax* 63, 81 (Tax 1988)); *Shelter Dev. Corp. v. Director, Div. of Taxation,* 6 *N.J.Tax* 547, 553 (Tax 1984) ("The broad language employed in § 6 demonstrates that the Legislature did not wish to deal with the details of this provision, but instead left to the Director the task of establishing the definitional framework with which to implement allocation."). The Director's authority extends to adopting a regulation that changes a prior administrative interpretation. *Metromedia v. Director, Div. of*

*Taxation,* 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984) (approving Director's novel interpretation of receipts fraction by using audience share of out-of-state television and radio stations broadcasting in New Jersey).

Although the dissent contends that the property factor includes only owned property, section 6(A) is not so limited. Missing from the description of property included within the section is the word "owned." Hence, the words of the statute permit an interpretation that includes leased property. Brunswick acknowledges that modern commercial practice includes extensive leasing of property and that it earns income on the warehouses and bowling centers that it leases in New Jersey. The Director could properly conclude that a lessee such as Brunswick, like an owner, should pay its fair share of the cost of public benefits and services that it uses to generate profits. With changes in economic conditions, such as the increasing popularity of property leasing, the Director needs the authority to adapt the Division's regulations to assess more accurately the income of a lessee that is reasonably attributable to the State.

Our dissenting colleagues note with approval that "[t]he overwhelming majority of states have specifically amended their corporation business-tax laws through their legislatures to include leased property in the property allocation formula." *Post* at 118, 638 *A.*2d at 811. The difference between the majority and the dissent therefore is not whether New Jersey may include leased property in that formula. We differ on the narrower question whether the Legislature has cloaked the Director with sufficient authority to adopt a regulation that includes such property in the formula. If, of course, the Director has misperceived that authority, the Legislature may override the regulation by appropriate legislation. *See In re Adoption of Regulations Governing State Health Plan,* 135 *N.J.* 24, 637 *A.*2d 1246 (1994) (holding Legislature may override regulations concerning effect of State Health Plan).

The judgment of the Appellate Division is affirmed.

GARIBALDI, J., dissenting.

*N.J.S.A.* 54:10A–6(A) (section 6(A)) defines the fractional value of property to be included in calculating the "allocation factor" under the Corporation Business Tax Act, *N.J.S.A.* 54:10A–1 to –40 (CBT or the Act), as "the average value of the taxpayer's real and tangible personal property within the State * * * divided by the average value of all the taxpayer's real and tangible property wherever situated * * *." That statutory language has remained unchanged since CBT's enactment in 1945. From 1945 until 1986, the Director of the Division of Taxation (Director) "considered [only] property *owned* by the taxpayer in the calculation of the property [fraction]." *Brunswick Corp. v. Director, Div. of Taxation,* 11 *N.J.Tax* 530, 533 (Tax 1991). In 1986, however, the Director changed his long-standing view, and promulgated *N.J.A.C.* 18:7–8.5(b) to include in that definition "[o]wned, leased, rented or used" property.

The Director asserts that pursuant to *N.J.S.A.* 54:10A–27 (Section 27) and *N.J.S.A.* 54:10A–8 (Section 8) she had the authority to redefine the property fraction. Section 27 vests the Director with the authority to promulgate rules and regulations as she deems necessary for the interpretation and application of the CBT, so long as those rules and regulations are consistent with the Act. Section 8 allows the Director to adjust the three elements of the allocation factor. Of those factors only the property fraction is relevant here.

Neither of those sections, however, gives the Director the authority to ignore the intent of the Legislature. I disagree with the Appellate Division that this is an "extremely close statutory interpretation case." Nor does this case present a question of the Legislature's probable intent. The new regulation is totally inconsistent with the Legislature's intent and represents an improper exercise of the Director's discretionary authority. Indeed, seldom has a statute's legislative history so clearly revealed the Legislature's intent. Accordingly, I dissent from the majority's affirmance of the judgment below.

## I

Agency regulations are presumptively valid. *GE Solid State v. Director, Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468, 472 (1993). Nevertheless, "an administrative agency may not under the guise of interpretation give a statute a greater effect than the language allows." *In re Barnert Memorial Hosp. Rates,* 92 *N.J.* 31, 40, 455 *A.*2d 469, 473 (1983); *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 563, 362 *A.*2d 13, 19–20 (1976). An agency is bound by its enabling legislation. The administrative officer is merely a " 'creature of legislation who must act only within the bounds of the authority delegated to [that officer].' " *In re Jamesburg High School Closing,* 83 *N.J.* 540, 549, 416 *A.*2d 896, 901 (1980) (quoting *Elizabeth Fed. Sav. & Loan Ass'n v. Howell,* 24 *N.J.* 488, 499, 132 *A.*2d 779, 785–86 (1957)).

We have a duty to restrain an administrative agency when it acts beyond the scope of the authority granted it by the Legislature. Because of the Legislature's unmistakable intent that the property fraction not include leased property, the Director lacks the power to amend section 6(A) to include leased property by issuing a new regulation, *N.J.A.C.* 18:7–8.5(b); hence, the amendment cannot stand.

## II

In construing a statute the primary task for the Court is to " 'effectuate the legislative intent in light of the language used and the objectives sought to be achieved.' " *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256, 1259 (1992) (quoting *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294, 297 (1980)). The language of sections of a statute must be read in the context of the statute as a whole. *Waterfront Comm'n v. Mercedes–Benz,* 99 *N.J.* 402, 414, 493 *A.*2d 504, 510–11 (1985). The majority has all but ignored the plain meaning of the language of the statute, contrary to the tenet that "[i]n the absence of explicit indication of a special meaning, words will be given their ordinary and well understood meaning." *In re Barnert Memorial Hosp. Rates, supra,* 92 *N.J.* at 40, 455

*A.*2d at 473; *Safeway Trails, Inc. v. Furman,* 41 *N.J.* 467, 478, 197 *A.*2d 366, 371, *cert. denied,* 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964). When the statute was enacted in 1945, the Legislature intended the words "taxpayer's real and tangible personal property" to include only property actually owned by the taxpayer and not leased property. The scope of section 6(A) was never intended to be ambiguous or neutral, notwithstanding the absence of the term "owned." Limiting the property factor to "owned" property was completely consistent with the then-prevailing practice of other states that had adopted similar corporation business tax statutes incorporating the so-called "Massachusetts formula" for the allocation of corporate income. *See* Jerome Hellerstein, *State Taxation: Corporate Income and Franchise Taxes* ¶ 9.19[1], at 9–107 (1993). Moreover, the Legislature adopted the language of section 6(A) from a New York statute. Later, New York amended its statute specifically to include rented real property and rented tangible personal property. *Brunswick Corp., supra,* 11 *N.J.Tax* at 537 n. 4. The failure of New Jersey's Legislature also to amend its statute demonstrates the Legislature's intent that rental property be excluded from New Jersey's formula.

Indeed, the Director had consistently construed the scope of that provision to be so limited for over twenty-seven years. *Id.* at 533 n. 3. The practical administrative construction of a statute over a period of years should be given great weight by the courts as evidence of its conformity with legislative intent. *See Body–Rite Repair Co. v. Director, Div. of Taxation,* 89 *N.J.* 540, 545–46, 446 *A.*2d 515, 517–18 (1982); *GE Solid State, supra,* 132 *N.J.* at 321, 625 *A.*2d at 480 (Handler, J., dissenting) ("More important, the statutory exemption as interpreted and applied by the Director has endured for a long time.").

However, even if we were to accept the Tax Court's interpretation of the words "taxpayer's ... property" as "neutral", we still must consider what the Legislature intended by those allegedly "neutral" words. To do so we must look to the legislative history. Such an examination conclusively establishes that the Legislature

never intended to include leased property in the property fraction of the CBT.

## III

This is not a case in which the Legislature failed to consider amending the statute to address the specific issue in question. In fact, the Legislature specifically considered a request to amend the statute to include leased property and declined to do so. A "caveat against drawing inferences from legislative acquiescence might be compelling were this not a case where the Legislature had given no consideration whatsoever to this issue." *Garfield Trust Co. v. Director, Div. of Taxation,* 102 *N.J.* 420, 431, 508 *A.*2d 1104, 1110, *appeal dismissed,* 479 *U.S.* 925, 107 *S.Ct.* 390, 93 *L.Ed.*2d 345 (1986). However, where a legislature has considered and then rejected a proposal, "[t]he stricture against drawing inferences one way or another from legislative acquiescence in judicial and administrative interpretation of legislative enactments atrophies with every such unsuccessful introduction." *Ibid.*

The most significant evidence that the Legislature specifically considered and rejected amending section 6(A) to include leased property is disclosed in the *Report of the New Jersey Tax Policy Committee,* "Non–Property Taxes in a Fair and Equitable Tax System," part V, at 25–28 (Feb. 23, 1972) ("1972 Report"). That Tax Policy Committee undertook a review of the taxation of business in New Jersey and, in particular, the CBT. The Committee recommended that the Legislature amend the "allocation" provisions in various respects to conform to the then-prevailing practices in other states. In particular, the Tax Policy Committee recommended that the Legislature amend the property fraction to include leased property, noting that that change had been made by many other states, including California, Connecticut, Delaware, Maryland, Massachusetts, Michigan, and New York (rented real property only). *Id.* at 26 & n. 21.

Although the Legislature amended the CBT in various respects, it did not amend section 6(A). Thus, despite an explicit recom-

mendation, the New Jersey Legislature chose to make no change to the property fraction. However, when the Legislature enacted the Corporation Income Tax Act, *N.J.S.A.* 54:10E–1 to –24 (CIT) in 1973, it specifically included as a property-factor provision "the average value of the taxpayer's *owned, rented or leased* real and tangible personal property . . ." *N.J.S.A.* 54:10E–6(a); *L.* 1973, *c.* 170, § 6 (emphasis added). Under established canons of statutory construction, when the Legislature has carefully employed a term in one place and excluded it in another, courts should not imply that term when the Legislature has excluded it. *GE Solid State, supra,* 132 *N.J.* at 308, 625 *A.*2d at 473.

Equally significant was the failure of the Legislature at its very next session (1974–1975) to enact Assembly Bill No. 1817, which, among other Act amendments, would have incorporated verbatim into the CBT property factor the language of its recently-enacted CIT counterpart, *i.e.,* that taxpayer's property included rented or leased property. That bill was introduced in the Assembly on May 16, 1974, and thereupon referred to the Committee on Taxation. The Committee reported out that bill, with amendments, and went to a second reading on April 21, 1975. The full Assembly never voted on it, however. *See Garfield Trust Co., supra,* 102 *N.J.* at 431–32, 508 *A.*2d at 1110–11 (holding analogous circumstances "conclusive[ ]" of legislative intent).

In 1990, Senate Bill 1112 was introduced pursuant to the recommendation of the State and Local Expenditure and Revenue Policy Commission. That Bill would have expressly amended section 6(A) to include leased property. The commentary states that the Bill "reflects the current interpretation of the law as reflected in * * * [the regulations]." The Bill was withdrawn six months after the commencement of this litigation. Brunswick asserts that the withdrawal was at the Director's request but more importantly asserts that the introduction of the bill that specifically includes rented and leased property supports its position that such property never was included in section 6(A). Thus, the new regulation is invalid. The Director, however, relies on that com-

mentary for support that the current interpretation of section 6(A) includes leased property. In any event, regardless of the reason, the Legislature once again failed to amend section 6(A) to include leased property.

The Legislature's specific inclusion of such property in the CIT "shows that the Legislature knows how to make this sort of specific exemption when it intends to do so; the absence of a counterpart specific exemption in the Corporation Business Tax Act suggests that the Legislature did not intend such an exemption." *Garfield Trust Co., supra,* 102 *N.J.* at 432, 508 *A.*2d at 1111. The Legislature's failure to amend the CBT and its insertion of identical language in the CIT conclusively establishes that the Legislature did not intend to include "leased" property in the CBT property fraction.

I am also unpersuaded by the Director's argument that the new regulation was the result of the inclusion of a net-income base in the CBT and of changing economic conditions. Like the apportionment factors in 1945, the "entire net income" base, added in 1958 (*L.*1958, *c.* 63, § 3), was derived substantially verbatim from its New York statutory counterpart. *See Amerada Hess Corp. v. Director, Div. of Taxation,* 107 *N.J.* 307, 315–16, 526 *A.*2d 1029, 1033–34 (1987), *aff'd,* 490 *U.S.* 66, 109 *S.Ct.* 1617, 104 *L.Ed.*2d 58 (1989). By the time the New Jersey Legislature adopted the "entire net income" base, New York had long since amended its property factor expressly to include "rented" real property. The Legislature, however, did not adopt the New York property factor amendment. *N.Y.Tax Law* § 210(10) (added by *L.*1949, *c.* 848, § 3); *see Airwork Serv. Div. v. Director, Div. of Taxation,* 97 *N.J.* 290, 294, 478 *A.*2d 729, 731 (1984) (holding purposeful and deliberate omission, on enactment of New Jersey Sales and Use Tax, of exemption found in New York counterpart act, which served as the model for New Jersey Act), *cert. denied,* 471 *U.S.* 1127, 105 *S.Ct.* 2662, 86 *L.Ed.*2d 278 (1985). Nor did the Legislature adopt the formulation of the property factor in the Uniform Division of Income for Tax Purposes Act ("UDITPA"), which had been ap-

proved in 1957. 7A *U.L.A.* § 10 at 349 ("the average value of the taxpayer's real and tangible personal property owned or rented and used"). Instead, following the addition of the "entire net income" base in 1958, the Director formalized by regulation his then long-standing construction of the property factor as limited to "owned" property. *N.J.A.C.* 16:10–4.150 (eff. Jan. 1, 1959) (redesignated *N.J.A.C.* 18:7–8.5(a)(2) in Aug. 1969).

Moreover, the commercial phenomenon of corporate leasing is not, and as of the effective date of the Contested Regulations was not, of recent vintage. The New York Legislature recognized those "economic conditions" as early as 1949 and amended its statutory property factor accordingly. Those same "economic conditions" also induced the National Conference of Commissioners of Uniform State Laws and the American Bar Association as early as 1957 expressly to include leased property in the property factor of the then-proposed Uniform Division of Income for Tax Purposes Act. 7A *U.L.A.* at 331.

In short, the Legislature, fully aware of the "changed conditions" on which the Tax Court and the Director place marked reliance, expressly "contemplated ... [the] specific situation" at issue herein and, notwithstanding the arguable policy justification for that recommended change, elected to make no change in section 6(A).

The overwhelming majority of states have specifically amended their corporation business-tax laws through their legislatures to include leased property in the property allocation formula. Besides New York, forty-one other states and the District of Columbia have made similar statutory amendments to include rented or leased property in the allocation formula along with owned property. See *Ala.Code* § 40–27–1, art. IV(10) (1993); *Alaska Stat.* § 43.19.010 (1993); *Ariz.Rev.Stat.Ann.* § 43–1140 (1993); *Ark. Code Ann.* § 26–51–710 (Michie 1993); *Cal.Rev. & Tax Code* § 25129 (West 1993); *Colo.Rev.Stat.* § 24–60–1301, art. IV, § 10 (1993); *Conn.Gen.Stat.* § 12–218 (1993); *Del.Code Ann.,* tit. 30, § 1903(b)(6)(a) (1992); *D.C.Code Ann.* § 47–1810.2(e)(1) (1993);

*Fla.Stat.* § 214.71(1) (1991); *Ga.Code Ann.* § 48–7–31(a)(2)(A) (1993); *Haw.Rev.Stat.* § 235–30 (1993); *Idaho Code* § 63–3027(j) (1993); 35 *Ill.Comp.Stat.* § 5/304(a)(1)(A) (1993); *Ind.Code* § 6–3-2–2(c) (1993); *Kan.Stat.Ann.* § 79–3280 (1992); *Ky.Rev.Stat.Ann.* § 141.120(8)(a)(1) (Baldwin 1993); *Me.Rev.Stat.Ann.* tit. 36, § 5211, Subd. 9 (West 1993); *Md.Code Ann., Tax–Gen.* § 10-402(c)(2) (1993); *Mass.Gen.L.* ch. 63, § 38(d) (1993); *Mich.Comp. Laws* § 208.47 (1993); *Minn.Stat.* §§ 290.191, subds. 9 to 10 (1993); *Mo.Rev.Stat.* § 32.200, art. IV, § 10 (1993); *Mont.Code Ann.* § 15–31–307(1) (1992); *Neb.Rev.Stat.* § 77–2734.12 (1992); *N.H.Rev.Stat.Ann.* § 77–A:3, I(a) (1991); *N.M.Stat.Ann.* § 7–4–11 (Michie 1993); *N.C.Gen.Stat.* § 105–130.4(j)(1) (1992); *N.D.Cent. Code* § 57–38.1–10 (1993); *Ohio Rev.Code Ann.* § 5733.05(B)(2)(a) (Baldwin 1992); *Okla.Stat.* tit. 68, § 2358(A)(5)(a) (1993); *Or.Rev. Stat.* § 314.655(1) (1992); 72 *Pa.Stat.* § 7401(3)(2)(a)(10) (1992); *S.C.Code Ann.* § 12–7–1150 (Law.Co-op.1991); *Tenn.Code Ann.* § 67–4–811 (1993); *Tex.Tax Code Ann.* § 141.001, art. IV, § 10 (West 1993); *Utah Code Ann.* § 59–7–312 (1993); *Va.Code Ann.* § 58.1–409 (Michie 1993); *Wash.Rev.Code* § 82.56.010, art. IV, § 10 (1992); *W.Va.Code* § 11–24–7(e)(1) (1993); *Wis.Stat.* § 71.25(7) (1993).

None of those states relied on an administrative agency effectively to amend the language of their corporation business tax, as the majority is allowing the Director to do. For a variety of reasons, the approach taken by those other states is the proper one.

I cannot emphasize strongly enough that this is not a case in which an administrative official, confronted with circumstances that could not have been contemplated by the Legislature, must interpret the statute anew in a manner consistent with the "probable intent" of the Legislature. *See, e.g., Amerada Hess Corp., supra,* 107 *N.J.* at 318–19, 526 *A.*2d at 1035–36. In all respects material here, those "economic conditions" had long since "chang[ed]," a fact of which the New Jersey Legislature has been demonstrably aware.

Whether the Director or even this Court thinks that the inclusion of leased property in the property fraction is proper is not important. Neither the administrative agency nor the Court can take liberties with the statutory language, "even to subserve a supposedly desirable policy not effectuated by the act as written." *R.H. Macy & Co. v. Director, Div. of Taxation,* 77 *N.J.Super.* 155, 173, 185 *A.*2d 682, 692 (App.Div.1962), *aff'd o.b.,* 41 *N.J.* 3, 194 *A.*2d 457 (1963). What the Legislature thinks, on the other hand, is important. The Director had no power to do what the Legislature repeatedly has failed to do.

Here the record amply demonstrates that the Legislature considered and then rejected the Director's position that leased property is to be considered in the property fraction of the CBT. Although numerous legislatures have adopted that type of amendment, our Legislature has not.

My interpretation also comports with the principle that taxes that expand the source of taxes, unlike exemptions, are to be strictly construed against the government. *Fedders Fin. Corp. v. Director, Div. of Taxation,* 96 *N.J.* 376, 385–86, 476 *A.*2d 741, 745–46 (1984). Thus, I conclude that sound principles of statutory construction support my conclusion that the Legislature did not intend that leased property be included in the CBT property fraction.

I would reverse the judgment of the Appellate Division.

Justice CLIFFORD joins in this dissent.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK and O'HERN—4.

*For reversal*—Justices CLIFFORD and GARIBALDI—2.